IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

July 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| C. J. CLAPP MOBILE HOME | ) | ROANE COUNTY |
| MOVERS, INC., and | ) | 03A01-9707-CV-00288 |
| CLARA J. CLAPP | ) | |
| | ) | |
|     Plaintiffs/Cross- | ) | |
|     Defendants-Appellants | ) | |
| | ) | |
|     v. | ) | HON. RUSSELL E. SIMMONS, JR., |
| | ) | JUDGE |
| BILL GOLDSTON, d/b/a | ) | |
| GOLDSTON'S WRECKER SERVICE | ) | |
| and | ) | |
| DONNY and TAMMY MOORE | ) | |
| | ) | |
|     Defendants/Cross- | ) | |
|     Plaintiffs-Appellees | ) | AFFIRMED AND REMANDED |

MICHAEL P. McGOVERN OF KNOXVILLE FOR APPELLANTS

WILLIAM A. NEWCOMB OF HARRIMAN FOR APPELLEE GILL GOLDSTON

J. POLK COOLEY OF ROCKWOOD FOR APPELLEES DONNY AND TAMMY MOORE


O P I N I O N


Goddard, P.J.



C. J. Clapp Mobile Home Movers, Inc., and Clara J. Clapp appeal judgments rendered against them in favor of Bill Goldston, d/b/a Goldston's Wrecker Service, and Donny and Tammy Moore in the following amounts:

1.  $500 to the Plaintiffs for loss of use of Ms. Clapp's equipment while in the possession of Mr. Goldston.

2.  $4239 to Mr. Goldston for wrecker service.

3.  $11,500 to Mr. and Mrs. Moore for damages to their mobile home.

The genesis for this suit was a contract entered into between the Moores and Clapp Mobile Home Movers to relocate their 16 by 70 foot residential mobile home from Buttermilk Road in west Knox County to Hassler Mill Road in Roane County[1] for a fee of $750.

On September 17, 1996, Clapp Mobile Home Movers initiated the move by attaching axles and wheels to the mobile home and towing it with a 1984 International tractor owned by Ms. Clapp, which was designed for moving mobile homes. It is known in the trade as a "toter." Considerable problems were encountered in the move. Wheels came off the axles, and also tires blew out. This necessitated procuring the services of a wrecker to pull the mobile home off the highway until the next morning, at which time it was taken to the lot of Bill Goldston, d/b/a Goldston's Wrecker Service. This was done for security reasons to protect the mobile home and articles inside because of the damage occurring during transit.

---

[1]    These locations are taken from the complaint. However, Mr. Moore's answer states relocation was from "Buttermilk Road in Roane County to a location on Swicegood Lane." Mr. Moore's answer does not designate the county location of Swicegood Lane.

When the mobile home was delivered to the Goldston lot Mr. Goldston presented Ms. Clapp a bill for some $5800, which she was unable or unwilling to pay. Mr. Goldston thereupon claimed a lien for his services on the toter and determined to hold it until the bill was paid.

The initial suit was brought on October 9, 1996, by the Plaintiffs seeking a writ of possession as to the toter and also to recover compensatory damages and punitive damages for fraud, conversion of property and breach of contract from the Defendants. The Plaintiffs' suit also sought treble damages for violation of the Tennessee Consumer Protection Act.

On October 10, 1996, Mr. Goldston surrendered the toter in question upon the Plaintiffs posting a bond in the amount of $6000, and shortly thereafter it was agreed the case would be tried in Circuit Court on February 19, 1997. On November 21, 1996, Mr. Goldston filed an answer to the complaint and a counter-complaint seeking $5000 for wrecker services rendered. On the next day, November 22, 1996, Mr. Moore filed an answer and he and his wife a counter-claim seeking $35,000 for damages to his mobile home. The case was tried on February 19, 1997, resulting in the judgments hereinbefore stated.

The Plaintiffs raise 10 separate issues on appeal. (See appendix.) The evidence relative to the liability of the various parties was sharply disputed as to issues II, VI, VII and

VIII, which principally questions the Trial Judge's finding of fact or his exercise of judicial discretion. We believe in view of the deference we accord a trial judge in such matters that it is appropriate he be affirmed in accordance with Rule 10(a) of this Court as to issues II, VI, VII and VIII.

We will now address the remaining issues raised by the Plaintiffs.

<u>ISSUE I</u>

The case, by agreement of the parties reached on November 19, 1996, was set for trial on February 19, 1997. At the time the agreement was made, the answer and counter-claim of Mr. Goldston and the Moores had not been filed, but were filed immediately thereafter, Mr. Goldston's on November 21 and the Moores on November 22. The motion for a continuance, which in the main was predicated upon the ground counsel for the Plaintiffs did not have sufficient time to respond to the counter-claims filed, was not made until February 18, 1997, the day before trial. We do not believe under these circumstances the Trial Court abused its discretion, which is the standard we apply when reviewing, granting or denying continuances.

4

A written contract was entered into between Clapp Mobile Home Movers, which was executed by one of its employees, Dan Webb and Donny Moore, which provides the following:

/s/ Donny Moore          9-16-96
Customer Signature          Date

/s/ Dan Webb          9-16-96
Employee's Signature          Date

I, Donny Moore, understand that I am responsible for any wrecker service needed. I, Donny Moore, release C. J. Clapp Mobile Home Movers and Service from any responsibility of damages occurring to my mobile home due to rainy weather. C. J. Clapp Mobile Home Movers and Service normally do not pull mobiles in these type of weather conditions.

There is proof in the record, as found by the Trial Judge, that the intent of the sentence relative to providing wrecker service, as testified to by both Mr. Moore and Ms. Clapp, was directed to maneuvering the mobile home over soft ground at the relocation site. We recognize that an objection was made to the evidence by counsel for the Plaintiffs when propounded on cross-examination to Ms. Clapp, although no ground for the objection was stated.

The obvious ground was violation of the parol evidence rule which precludes evidence that contradicts the clear terms of the agreement and has been held to be a rule of substantive law and no exception nor assignment of error is necessary to insure

5

its application.  <u>Maddox v. Webb Construction Co.</u>, 562 S.W.2d 198

(Tenn.1978).

We believe, however, that notwithstanding the rule, the

admission of this evidence comes under the mutual mistake

exception to the rule.  <u>Stamp v. Honest Abe Log Homes, Inc.</u>, 804

S.W.2d 455 (Tenn.App.1990).

In addition to the paper writing hereinbefore set out,

Mr. Moore and Mr. Webb signed a check list which provides as

pertinent to the issue raised the following:

<u>AFTER MOVE</u>

| | YES | NO |
|---|---|---|
| . . . . | | |
| DO YOU WANT US TO GET WRECKER IF NEEDED, BUT YOU ARE RESPONSIBLE FOR THE PAYMENT OF WRECKER BILL | X | |

Thus it appears that the agreement relative to wrecker

service was intended to apply after the move, not en route.

Moreover, it would seem highly unlikely that Mr. Moore

would bind himself to pay for all wrecker services incident to

the move, which would include negligence on the part of Clapp

Mobile Home Movers in running the toter and mobile home off the

road while in transit, nor do we think under such circumstances

Clapp Mobile Home Movers would expect the wrecker services to be

the responsibility of Mr. Moore.

6

Finally as to this point, we note that the case of McGannon v. Farrell, 214 S.W. 432 (Tenn.1919), our Supreme Court, which cites as authority a number of earlier cases, holds that the rule does not apply "where the original contract was verbal and not in writing, and a part only of it was reduced to writing."

## ISSUE IV

With respect to issue four, counsel for the Plaintiffs made an oral motion for such an amendment during the direct testimony of Ms. Clapp.  Given the fact that the counter-claim for wrecker services had been pending for several months, we cannot find the Trial Court abused its discretion in denying a motion made during the course of the trial.

## ISSUE V

The trial court is accorded wide discretion in the admission or rejection of expert testimony, and in the case at bar we find no abuse.  The objection raised, in our view, goes to the weight and not the admissibility of Ms. Childs' testimony.

## ISSUE VII

With regard to this issue, proof was introduced by Mr. Goldston that the State of Tennessee requires a fee schedule be

7

filed with it before a party is permitted to render services at the instance of the State, that Mr. Goldston had previously filed such a schedule with the State, which was accepted by it and the charges to the Plaintiffs were in accordance with Mr. Goldston's filings with the State. While it is true a witness for the Plaintiffs testified in his opinion the charges were excessive, given the fact they were in line with those the State would honor, we cannot find the evidence preponderates against the Trial Court's finding in regard thereto.

## ISSUE IX

With regard to this issue, the Plaintiffs argue that Mr. Goldston's assertion of a lien on the Plaintiffs' toter, which was ultimately found to be untenable, coupled with his insistence on being paid an amount some $1500 in excess of that allowed by the Trial Court, demonstrates a violation of the Tennessee Consumer Protection Act and the Trial Court was in error in dismissing this portion of the Plaintiffs' claim at the close of their proof.

We first point out with regard to this issue that the Plaintiffs are asserting the incorrect standard of review of such action in non-jury cases. In a jury case the Plaintiffs are correct that on motion for directed verdict the court must take the strongest legitimate view of the evidence favoring the Plaintiffs' position. However, the rule is different in non-jury

8

cases, as is articulated in <u>City of Columbia v. C.F.W. Const.</u>
<u>Co.</u>, 557 S.W.2d 734 (Tenn.1977), wherein the Court makes this
differentiation (at page 740):

> Motions for dismissal in non-jury cases under Rule 41.-
> 02(2), Tennessee Rules of Civil Procedure, and motions
> for directed verdicts in jury cases under Rule 50,
> Tennessee Rules of Civil Procedure, are somewhat
> similar, but, there is a fundamental difference between
> the two motions, in that, in the jury case, the judge
> is not the trier of the facts while in the non-jury
> case he is the trier of the facts.  In the jury case he
> must consider the evidence most favorably for the
> plaintiff, allow all reasonable inferences in
> plaintiff's favor and disregard all counteracting
> evidence, and, so considered, if there is any material
> evidence to support a verdict for plaintiff, he must
> deny the motion.  But in the non-jury case, when a
> motion to dismiss is made at the close of plaintiff's
> case under Rule 41.02(2), the trial judge must
> impartially weigh and evaluate the evidence in the same
> manner as though he were making findings of fact at the
> conclusion of all of the evidence for both parties,
> determine the facts of the case, apply the law to those
> facts, and, if the plaintiff's case has not been made
> out by a preponderance of the evidence, a judgment may
> be rendered against the plaintiff on the merits, or,
> the trial judge, in his discretion, may decline to
> render judgment until the close of all the evidence.
> The action should be dismissed if on the facts found
> and the applicable law the plaintiff has shown no right
> to relief.

The Trial Court in the main allowed[2]--and we affirm--
Mr. Goldston a recovery for the wrecker bill he submitted, which
would refute a claim that he engaged in unfair or deceptive acts

---

[2]     The portion of the wrecker bill not allowed by the Trial Judge was
that relating to a class A wrecker, which he reduced from $673 to $180, and
the hourly labor charge on September 18, which he reduced from $972 to $324.
It would appear the reductions made by the Trial Court would dictate a
judgment of $4698.47 rather than the $4239 awarded.  However, because neither
party questions this figure, we will notice it no further.

or practices proscribed under the Tennessee Consumer Protection Act.

## ISSUE X

The facts giving rise to this issue are that a proposed witness for the Plaintiffs advised their counsel that he thought he had seen the Trial Judge in this case entering a local restaurant at the noon recess with Mr. Goldston and the counsel for Mr. Moore. After the noon recess, counsel for the Plaintiffs broached the subject in his cross-examination of Mr. Goldston when he asked Mr. Goldston with whom he had lunch that day. This eventually led to the information relayed by the proposed witness.

It is clear from the record that the Trial Court was somewhat upset by the manner in which counsel for the Plaintiffs chose to raise the issue, which was resolved by the Trial Court announcing that he had lunch at his office with only his secretary present.

While we would be disinclined to find prejudicial error on the part of the Court in not declaring a mistrial and recusing himself, even if a proper motion had been made, we certainly would not find error where, as here, no motion was made.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of the judgments and costs below.  Costs of appeal are adjudged against the Plaintiffs and their surety.


_____
Houston M. Goddard, P.J.


CONCUR:


_____
Charles D. Susano, Jr., J.


_____
William H. Inman, Sr.J.


11